We'll move to our second argument of the morning, and that comes in Appeal No. 24-22-19. Planned Parenthood, the Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Commissioner of the Indiana State Department of Health and others. Okay, I see Ms. Lawrence, nice to see you. Okay, you may begin. May it please the Court. Generally, children are not allowed to make medical decisions by themselves. In the vast majority of cases, minors' parents participate in and must consent to their child's medical procedures. Abortions are not an exception to that rule. To reiterate that basic point, Indiana passed a law which bars knowingly or intentionally aiding or assisting minors in obtaining an abortion without either parental or judicial consent. The law does not regulate speech on its face. It regulates conduct. Even if this Court decides that the law picks up some speech as it regulates that conduct, the law should be subject to, at most, intermediate scrutiny, which it easily satisfies. Now, before getting to the constitutional issue, I want to briefly flag to the Court that it should assure itself that it still has jurisdiction here. And that's because all of us— Before you do, I have a question I'd like to ask you, and it's this. When you speak of parental consent in the briefs, this is my question. Consent to what? Indiana, obviously, has the authority to place conditions on an abortion performed in Indiana. But are you saying that Indiana can impose its own consent requirements on abortions that are to be performed in another state? Or that Indiana can require that parental consent for an abortion be given before a minor can even be given information about legal abortion services outside of Indiana? Just so I'm on the same page with you as to parental consent. And then I know you obviously want to get on to standing, but I'd really appreciate this. Certainly, Your Honor. And I want to be very clear about what Indiana's law actually does, because there seems to be some confusion about that in the briefing. So first of all, Indiana's law says that it has to result in a minor obtaining an abortion. So for example, if a 13-year-old comes in and says, I'm doing a project on abortion law, Planned Parenthood isn't limited in saying different states have different laws about what is required to get an abortion. Of course, what Indiana's law does do is that it says that in certain circumstances, generally, abortion is banned. In certain circumstances, minors may receive that abortion if they have certain parental consents. So while the parental consents in Indiana do not apply to abortions in Illinois, what it does do is that it says people within Indiana cannot seek to evade those requirements. And another thing I want to be very clear about is what exactly the injunction is limiting the state from enforcing right now. The injunction limits not only the providing of information, but also referrals and calling another doctor on behalf of a child who is there without any parental consents. The only thing I wanted to flag on the standing issue Well, are you telling us on that point that you think the injunction would be acceptable if it distinguished between providing information and providing a referral? We're not saying that the injunction would be acceptable, but that at minimum, it should be narrowed to eliminate the providing of referrals. What's the difference between providing information and providing a referral? A constitutional difference? Yeah, absolutely, Your Honor. So as the unanimous Eighth Circuit just decided, providing a referral is part of the provision of medical treatment. And so a referral is conduct that can be regulated by the state, and it doesn't fall within the same ambit as providing information generally. Now, of course, one of the things that's important to discuss is that providing information generally is not inherently protected, as the Supreme Court decided in Holder. But rather, as Rumsfeld explained, when a speech regulating conduct, here aiding and abetting a minor in evading these parental obligations, whether the content of the speech is what triggers the law, or whether the result is what triggers the law. And that's from Rumsfeld, that content-result dichotomy. Here, Planned Parenthood could say, you can go to Illinois and get an abortion, and the result is what's going to trigger whether the law is implicated, not the actual content of the speech. So what I mean by that is, in one instance, you have a child who is sitting there with both of their ID, her birth certificate, and a notarized consent form, and they say, we want to get our child an abortion, and Planned Parenthood says, you can get an abortion in Illinois. You could also get an abortion in Indiana, depending on the circumstances. That is going to be different than if... Sorry, sorry, but so answering, to answer that question legally, and I suppose then they could refer also, right? In that instance, they wouldn't be aiding and abetting in evading the requirements, because... But if, for example, the document is not properly notarized, or there's some question about the formalities of the consent, then that would still be a violation, correct? It would not be, because the law says that as long as the person is attempting to fulfill, or in the process of attempting to fulfill, you can't knowing or intentionally aid or abet if they're standing there and saying, we just got to go down to the notary. If a girl comes in and says, I need this information, I'm going to talk to my mom tonight about getting consent, is that, is she attempting to comply with the requirement? That might be a closer question of fact as to whether the law actually applies, whether there is knowing and intentional evading of the statute, but once again, that's not what the injunction is limited to. The injunction applies just as much to a 14-year-old who comes in and says, I've got to get an abortion, and I need to do it this week before my parents find out. The injunction implies just as much to Planned Parenthood setting up an appointment, referring and calling an out-of-state provider for that child as for someone else. And that's one of the largest issues of the injunction here, is that it doesn't actually limit itself to the circumstances that the district court judge raised. So even if this court were to find that this isn't subject to intermediate scrutiny, that there were certain elements as applied were to violate the law, were to violate the First Amendment, the injunction has to be narrowed to those instances. How would you do that? Well, it would depend. Of course, in our view, the entire law is permissible because it is a, it satisfies intermediate scrutiny. I'm asking about your fallback position, which you just proposed. Yes, Your Honor. What is it specifically? If this court were to say providing information generally falls within the speech is protected by the First Amendment, we would suggest that allowing doctors to, allowing Planned Parenthood to provide referrals and to call people on behalf of other persons is not properly within that same First Amendment ambit. That's more specifically speech. I'm going to stop you. Virtually all states require some form of parental or adult involvement in the abortion decision for a minor. So to that extent, how does giving an Indiana minor information about abortion in other states undermine parental consent or the interests of parental consent serves? How does it? Judge Rimmer, is your question, if you gave information to a minor to go to a state where she also would have to receive similar parental consents, that wouldn't undermine the requirements? Pretty much. I'd love to hear that answer. Yeah. Yeah. So I think there are two things there. So first is, if those laws match up with Indiana's law, that might be a closer question of whether Indiana's law applies. But once again, this goes back to the injunction. The injunction isn't limited to Planned Parenthood can provide this information in situations where there's not a close match because the same amount of parental consent is required. And there are some states like Illinois that don't require any parental consent for a child to get an abortion here. And so there also are those states where there is that, where there's certainly a strong interest of the state in ensuring that the parent-child bond isn't broken by a child getting medical procedures without their parent's permission, knowledge, or consent. Ms. Lawrence, could you direct us to other situations where providing truthful information about the laws of other states is punishable by law? Well, if Your Honor looks at Holder versus Humanitarian Law Project, in that case, providing information about how to talk to the UN or how to present a case before the UN, I think there's two important reasons to look at that analysis here. Because first of all, like Planned Parenthood's argument that you can find this online. The law in Holder, you could find information about how to petition the UN online, but you still couldn't provide the direct support by providing it to certain individuals. And then the second way that is applicable here is because providing truthful information is not, in and of itself, a defense to criminal conduct. So, for example, insider trading almost always depends on someone providing truthful information to someone else. It's the result of how that information is used. There are certainly a lot of situations where the law protects or prohibits disclosure of information, privileges, national security secrets, and so on. But I'm trying to come up with some closer analogy than terrorism here. We think of all the variety of ways where states differ. We can talk about gambling, we can talk about smoking and vaping, we can talk about divorce requirements, and so on and so forth. And I'm not aware of any of those situations where truthful information about legal behavior in those states can be punished. Well, and I want to be clear because the Planned Parenthood talking about what you can legally do in other states is not punishable under this law. This law doesn't regulate that type of speech on its face. The only question is, is that information... Well, if a person who receives that information acts on it, correct? That's what you want to punish. If that information was provided either knowingly or intentionally, there's also a sign to a requirement. So generally sharing the information, or perhaps sharing it to a teen who isn't pregnant, isn't going to trigger the statute because the statute is regulating conduct. Like this court said in KC, that the state is allowed to make a decision about how medical procedures should occur in the state. Although we gather that parental control is less important in KC than it is here, in the state's view, correct? To be clear, in KC the argument has always been that parents should have the right to decide what legal treatment... But the state in KC was telling parents what they may not do for their children, correct? The state was regulating what medical treatments could be and what medical procedures could be provided within the state. And so to here, the state has regulated what medical procedures may be provided within the state. Did you want to say something on subject matter jurisdiction? A bit ago, you were about ready to make a comment on that. At the very beginning, if I recall correctly. Briefly, Your Honor, we just would like to flag for the court that there are no facts in the record about how Planned Parenthood is currently operating. When this case began, when all the facts were submitted, Planned Parenthood operated abortion clinics within Indiana and had licenses to do so. Now Planned Parenthood no longer operates abortion clinics and we understand the facts on the ground are changing, such as recent press releases that have talked about closing of clinics or increased telehealth. We just don't know how they currently are operating in Indiana and it may be worth investigating that before this court can assure itself of its jurisdiction. If I may, I'd like to reserve my time. Okay, very well. Mr. Rose, good morning. Thank you, and may it please the court. The aid or assist statute prohibits Planned Parenthood or anyone else from providing factually accurate information about lawful out-of-state abortion services to willing listeners, and in fact the district court explicitly limited its injunction to information about lawful services. That restriction does not become constitutional simply because those listeners are minors, particularly because, and I do want to stress this because I think it is lost in a lot of the state's argument, this statute applies even if the minor's parents are sitting next to them at the time. The question in this case that I think is worth asking more than any other is this, what exactly is left of the state's argument if we assume that Bigelow was correctly decided? That case obviously concerned an encouragement statute applied to the provision of factually accurate information about lawful out-of-state abortion services. We have spent a lot of time arguing about speech versus conduct, speech integral to criminal conduct, the meaning of KC and so forth, but it seems to me that as soon as you accept Bigelow as a given, the state is left with two things and only two things, standing and the application of strict scrutiny. Can we talk about standing for a minute? I think you can help us out here. Is your client suing on behalf of itself in an organizational capacity or is it suing on behalf of members in an associational capacity? And the reason I ask that question is because it seems to me that there's only two ways that it can sue. It's either suing on behalf of itself or it's suing on behalf of members, you know, under like the Hunt line of cases. Of course, Judge, and I'm not entirely sure what you mean by members. Planned Parenthood is suing as an organization with employees who provide this information, the physicians. I don't think Planned Parenthood... Okay, is it suing on behalf of itself as an entity, as an organization, separate and apart from its employees? I don't even know what it looks like to view those as distinct, and I apologize, Judge, I'm not trying to be coy. Planned Parenthood's physicians and other health care staff are providing this information as a part of their duties for Planned Parenthood. So whether we view that as organizational speech or as Planned Parenthood suing on behalf of its employees... Okay, in paragraph 11 of the complaint, and I know this is going back a ways, okay, and I'm not meaning to pop quiz you, okay, the organization says that, and I'm quoting from paragraph 11, it brings this action on its own behalf, on behalf of its patients, on behalf of its staff, including physicians, as employees or contractors perform abortions, et cetera. The reason I want to focus at the outset on whether it's suing on its own behalf as an organization is because the passage of time complicates that. And all I mean by that is, as you acknowledge in your brief, in that footnote three, that one of the named defendants, what, the Commissioner of Health, is really not a proper defendant for purposes of the injunctive relief because of the changes in Indiana law with respect to licensing. Okay, so for all practical purposes, that means that the only proper defendant for injunctive relief is the Indiana Medical Licensing Board, right? Yes, Your Honor. Okay, and if Planned Parenthood is suing, we'll come to the on behalf of the employees, and don't worry, I'm going to give you time, okay? If Planned Parenthood is suing on its own behalf and it's suing the Indiana Medical Licensing Board, that gets odd from a standing standpoint. And the only reason it's odd is because Planned Parenthood doesn't hold a medical license, doctors do, right? Of course, Judge, that relationship is so close, I can't imagine. Okay, and the licensing board can't seek monetary relief against Planned Parenthood, and nor can there be civil penalties sought. Civil penalties can only be sought, what, by parents or the minor or the guardians or something. So it's odd for me to see how Planned Parenthood itself is a proper plaintiff, given the passage of time and those complexities. So it seems you have to be suing your client, has to be suing in some kind of associational capacity on behalf of its employees. So that would seem to implicate the associational standing doctrine. I don't know, and we know so little about the plaintiff. Is it an association of members? And Judge, the reason I'm having such a difficult line with this questioning is that Hunt and his progeny, generally, those are membership organizations. We're not talking about employees as members. I think quite clearly, if Planned Parenthood's physicians lost their licensure or refused to speak on behalf of Planned Parenthood because they were at risk of losing their licensure, I think quite clearly that is an injury to the organization itself. So I don't... Like kind of a la Havens Reality, or what do you have in mind? Judge Havens, to the extent that it still exists, is different in kind. I think that when Planned Parenthood has to tell its employees, you cannot speak, you cannot deliver our message... But then you have to focus on the only viable defendant that's left. Of course, Judge. And I think that Planned Parenthood suffers an injury if its doctors cannot speak, or if its doctors suffer licensure consequences, cannot provide services on behalf of Planned Parenthood. This is not an organizational associational standing case in the traditional sense of the term. And I know of no case law out there that says an employer cannot... Doesn't suffer injuries when its employees cannot deliver its own message. Well, I mean, as a... All right. I mean, I still think you got an issue with what defendant remains and what that defendant can do. Sure. And obviously, we recognize that the only thing that the Medical Licensing Board can do is against the doctors directly. I just think that that is injury to Planned Parenthood itself, whether viewed as an organization, whether viewed as an organization that wants its employees to deliver this message, or whether viewed as simply suing on behalf of its employees. I apologize. I simply don't see the distinction that you appear to see. I do, however, want to turn to the... May I just say something? This seems that the state defendants would argue in the reply brief that further development of the record is required to confirm standing. I myself am not convinced that the record is unclear as to any material point, but to the extent it might possibly be, wouldn't the fault be attributed to the defendant's failure to contest standing below? I think, Judge, it's not just the failure to contest standing. I think it's the failure to contest undisputed facts in the record. I was about to turn to what I think is the second prong of Judge Scudder's question, which is, we obviously recognize that this case was being litigated in parallel to the state court litigation. In recognition of the fact that the state court injunction might not be a forever thing, we made abundantly clear on summary judgment that, were the state court injunction vacated, not only would Planned Parenthood continue to provide this information, but its need to do so would increase substantially, given that the universe of persons who can receive Indiana abortions has just decreased substantially. That is an undisputed fact on the summary judgment record. If the state had wanted to test that fact, the time to do so was on summary judgment. If it had wanted to put Planned Parenthood to the fire or force Planned Parenthood to demonstrate that, after the state court injunction was lifted, it had fully a year, almost a year, excuse me, between the lifting of the state court injunction and the entry of summary judgment in this case, during which it could have asked to supplement the record. It could have asked to reopen discovery. It accepted standing throughout the court below. It accepted that this is information that Planned Parenthood's physicians actually provide. Obviously, we've argued that it doesn't matter if other health care staff provide it. And it did so explicitly. And we understand that standing is non-waivable. Jurisdiction is non-waivable. But that's more than a legal argument. That's a factual concession about what's actually happening. And it's a factual concession that we need. Nobody seems to have focused on standing. I have a hard time understanding that, given the passage of time, given the changes in Indiana law, given that the injunction really can't run against the commissioner anymore. And certainly, Judge, I agree that parties could have done a better job of at least cleaning up the extraneous parties after the state court injunction was lifted. But again, we made clear on the summary judgment record that this is information that Planned Parenthood is going to continue to provide, even if the state court injunction was lifted. The time to contest that was on summary judgment. If the state was not satisfied with it, the time to do so was in the district court. This comes very, very late in the day, given that everyone has accepted for eight years that this is information that Planned Parenthood's physicians provide. The merits of that. I'm sorry, Judge Rovner, did I hear you? I'm so sorry. The only thing I want to address on the merits, cognizant of my dwindling clock, is the state's attempted distinction between the first prong of the district court's injunction, the provision of information, and the second prong, the referrals or the helping young persons through the process. Those microphones are recording you. They are not amplifying you. I apologize, Judge. I want to address the state's distinction between the two separate prongs of the district court's injunction. Quite clearly, under NIFLA, the first prong is subject to strict scrutiny. Say it again. The first prong that you cannot provide factually accurate information is subject to strict scrutiny. It is a content-based restriction on speech. We think it's a viewpoint-based restriction on speech. I think you were stating a case by an acronym that none of us are familiar with. You said something under N. NIFLA, National Institute of Family and Life Advocates v. Becerra, the Supreme Court's professional speech, or lack thereof, case. The second prong, at its very best, the state's argument means that the second prong of the district court's injunction is subject to intermediate scrutiny rather than strict scrutiny. We think it fails any level, so I think that may be an academic issue. But when we talk about referrals, which is the line the state is attempting to draw, I have a very difficult time talking about that in the abstract. I can't imagine that there is a constitutional difference between Planned Parenthood saying, here's this information in the event you find it useful, and Planned Parenthood saying, here's this information. If you decide to use it, I happen to know that Dr. Smith has a short wait period, is very good with patients, whatever. I can't believe that there is a constitutional distinction between those. The Eighth Circuit in the Brandt case addressed the issue in the context of an exceedingly narrow referral-only statute with specifically defined manners in which referral was addressed. I think that case could have been resolved similar to KC as this applies to in-state providers as well. It's integral to criminal conduct. But I don't think that this court is in a position to craft onto Indiana's aid and assist statute some sort of referral exception. If the Indiana General Assembly wants to go back to the drawing board and craft a narrower statute addressed to that particular issue, we can certainly talk about it then. But having drafted the broadest statute imaginable, as I say, I have a very difficult time talking about referral in the abstract. And I think the state is left with the statute that it has drafted. If there are no further questions, thank you very much. I have a couple. Do you mind? I got a couple. And don't worry about the clock, okay? My question, you seem, I don't want to put words in your mouth. You can tell me, do you read KC as a facial over-breadth case? And if so, how do you read it that way? I do, Judge. What are you looking at in the case to see? And the reason I, I don't mean to be pointed about it, it's just the court talks about it in as-applied terms. So that argument throws me off a little bit. And with respect to the panel in that case, the decision throws me off a little bit too. I think given the court's focus on the fact that this information is being prohibited for in-state referrals, its focus on you cannot provide this information or the statute includes the provision of this information to persons who cannot legally perform the service. I think the only way to read the court's decision is through an over-breadth analysis, saying that because it has not been limited to places who can legally perform these services, the statute fails under over-breadth analysis. There is a way. I thought it was the injunction that failed under over-breadth analysis. An injunction that failed. And quite frankly, there is a way to read KC consistent with Bigelow. And the state's reading does not do that. If we read KC to say that you do not have a First Amendment right to refer persons to services to provide information about services, where those services can be legally provided, then Bigelow was wrongfully decided and by definition. Do you read KC at a minimum to control on whether the law targets speech or conduct? I don't, Judge. I think that the focus of the court's decision was not on conduct, but was on speech integral to criminal conduct. That is still speech, similar to how it's been used by the Supreme Court. Simply telling someone, here's this information about your lawful out-of-state options, that is speech by anyone's definition. If it wasn't, then what I call NIFLA was wrongly decided because what the Supreme Court was talking about in that case was a requirement, granted compelled speech, not a speech prohibition, but compelled speech saying that you must provide patients with information about their lawful alternatives. We know from that case that One Planned Parenthood does so. That is speech. Okay. Any further points you want to make? Nothing further from me, Judge. Thank you very much. Okay. You're quite welcome, Mr. Rhodes. Okay. Ms. Lawrence, you have a minute and a half or a little more left. Thank you, Your Honor. I may please the court briefly on standing to begin with a couple things here. So first of all, One Planned Parenthood is saying that there are undisputed facts that existed in the record. All of these undisputed facts were undisputed at the time that Planned Parenthood was still providing abortions in Indiana. And these facts that were in the record about how Planned Parenthood operated all occurred, briefing was occurring while Planned Parenthood was still performing abortions in Indiana. All we want to do is flag for the court is that there are factual questions about how Planned Parenthood is operating now. Now, going on to the merits issue- Can I pause you just for a second on that? How do you think they're suing? Do you think they're suing in an organizational capacity? Mr. Rhodes was saying, you know, there's an injury to Planned Parenthood because the statutory restriction really restricts something, you know, at the core of the services it provides, et cetera. So if the physicians are at risk of losing a license, you know, that's an injury to Planned Parenthood because it's kind of acting through its physicians. Are they suing in that capacity or are they suing in an associational capacity? Frankly, Your Honor, I don't know. And that's part of the issue here is that we don't know. We don't know how Planned Parenthood is operating. We don't know how their doctors are operating. We don't know how their clinics are operating. We just don't know because- But why does it take- I mean, this case, the statute's been around a while. The case has been around a while. There's a ton of history here. And it's now September of 2025 and we're just now having this dialogue? Yes, Your Honor, that's correct because at every stage in litigation that, you know, we want to make sure that the court has jurisdiction over the case here. Do you agree with Mr. Rhodes that there was about a year between the end of the state injunction and the federal district court, a much narrower injunction here? There was a period of time when briefing had been completed and so that there was- Nobody raised any new issues at that time? No one raised those issues at that time. But, you know, of course, as Mr. Rhodes said, that cannot be waived because it's jurisdictional. This is very belated and it's, you know, for the first time on appeal, you're challenging their standing to, you know, to challenge the statute. And if I may, Your Honor, we understand, but part of that is because the facts on the ground have changed. When this lawsuit began, it was challenging multiple different parts of the law. It also, you know, Roe v. Wade was still the law of the land and Indiana's current abortion laws weren't in place. There has been significant factual and legal change since this case was originally filed and even as this case was briefed. If we were to give the district court and the parties a further opportunity to develop the record on standing, do you think it would be appropriate for us to leave Judge Barker's injunction in place pending the resolution of that process? No, Your Honor, because as we've explained, we think that the judge improperly applied the intermediate scrutiny standard that should have been applied instead of applying strict scrutiny. You mean vice versa? I'm sorry, yes. The judge applied strict scrutiny instead of intermediate scrutiny, but even under that strict scrutiny standard, the reasoning she used to say that the law did not satisfy strict scrutiny were not justifications to show that it wasn't narrowly tailored or in support of a compelling governmental interest. So the late standing challenge is an effort to get the injunction vacated, at least for a while? I mean, the court always has to assure itself that it has jurisdiction, and so whether a court makes— A principle we're all very familiar with, right? Yes, Your Honor. We got talking about standing. I think you had a merits. I just want to make sure you both feel like you've had time to make your points. Do you have any final point you want to make? Or if not, we can call it an argument. If I may, Your Honor, I'd like to just touch briefly on the merits. One of the things I want to make sure is clear is that the level of scrutiny that applies has to be tied to the law itself. So in O'Brien, the question wasn't what level of scrutiny applies to the very specific action that O'Brien was taking in that case. It was what level of scrutiny applies to the law. So the law here regulates conduct, and just because there's a speech element combined in that conduct doesn't mean that strict scrutiny automatically applies. Thank you, Your Honor. Ms. Lawrence, thanks to you. Mr. Rose, appreciate it very much. We'll take the appeal under advisement. And the court will now take a 10-minute recess before